Purno v. Fidelity Brokerage May it please the Court, my name is Rinaldo Purno. To my left is my partner and associate Sue Ranchoi. And this is the case involving the Federal Arbitration Act. My case is an as-applied challenge to the Federal Arbitration Act as it is applied in New York State. As a citizen of New York State, I've been hijacked. I've been hijacked from the Seventh Amendment right to a jury trial. And I've been – and the State of New York has been hijacked from its State's rights, the Tenth Amendment and State's rights. I'm here to ask the Court to reverse a decision of the lower court which dismissed my complaint against Fidelity Brokerage Services for failure, without prejudice, for failure to prosecute. I'm going to maintain and present evidence in the record that will suggest that it was not myself, plaintiff appellant, that failed to prosecute, but it was Fidelity itself, which did not follow a procedure listed in its own customer agreement, which states that they're supposed to give five – that after five days' notice, if there's no response from the person who objects to the arbitration, then they are supposed to do that for the – serve notice upon the person in order to get – in order to tell them where this arbitration is to take place. That never happened, and it's not in the record that it's never happened. My appeal, basically, is propped up by three particular points in the record. The first is my objection to the district court below that handed over my summary – my motion for summary judgment, partial summary judgment, to the – to a magistrate justice without my consent. And in my brief, I cite several cases as to why that should not have happened. The second instance in the record which props up this appeal refers to Section 28 U.S.C. Section 445, which deals with the disqualification of a justice or a judge and which I cite in my brief, which challenges the – which challenges the Supreme Court case in Prima Paint, which Justice Fortas was the – was the justice that decided that case, who decided that it was the Interstate Commerce Clause that underpinned the Federal Arbitration Act, which I am questioning in this appeal, and which I have cited legal research which supports my claim. And the other point in my appeal, the third point in my appeal, deals with the district – the lower court, the district court citing 28 U.S. Code Section 663. Now, they cite different parts of this code and to justify handing the summary judgment over to the magistrate judge. But the way I read 28 U.S. Code Section 636a, it says that the district court can't hand over certain motions to a magistrate judge with the exception of summary judgment, and my motion was for summary judgment. So the way I read 28 U.S. Code Section 636a is that it was impermissible for the court to hand over my – my motion to – to the magistrate judge. Getting back to the – to the point about service, infidelity is customer agreement. It says that – and I'm quoting – if you do not notify us in writing of your designation within five days after such failure or after you receive from us a written demand for arbitration, then you authorize us to make such a designation on your behalf. This was never done. It's not in the record. And it's also propped up by my letter to the district judge which explains what happened in the interim, in which I state that I never heard from Fidelity, that I never received any notice that I should appear before FINRA, et cetera. And I would also cite in the bill which is attached to my – not only to the briefs in my appeal, but also to the – to the complaint, the arbitration – the Arbitration Act itself, in Section 4, it states that the arbitration before – of that bill, which was before Congress, which, as I said, is attached, it – it reads – it reads that a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under written agreement for arbitration may petition any court in the United States. And then it goes to repeat the five-day notice. It says, five days' notice in writing of such application shall be served upon the court. Service, therefore, shall be made in a manner provided by law for service of summons in the jurisdiction in which the proceeding is brought. Now, I would assume that that means that service should have been brought the way service is usually brought in the State of New York, which the summons states where the – the date, the time, and where this has happened. This was never done. And the record shows that it was never done. Mr. Pernow, you've reserved one minute of rebuttal. Yes, thank you. And we'll hear from your adversary. Thank you, Your Honor. May it please the Court. David Lebowski from the Law Firm of Bressler, Emory & Roche for Appellee Fidelity Brokerage Services, LLC. We have a very standard arbitration agreement, two such agreements. It's an all-controversies agreement. Mr. Pernow signed both agreements, and there's no argument here that he was hoodwinked into signing the agreements – signing – entering into an arbitration agreement because his signature appears on the application page, and right above it, you see a disclosure of this agreement subject to an arbitration clause. So he doesn't make that argument. And there's no dispute that all the – all his claims are arbitrable because it related to – his claims about the restrictions that were imposed on his account all relate to the accounts, transactions, et cetera, et cetera. And this Court – many courts have held that securities brokerage accounts involve commerce, so that's certainly – he's certainly covered by the Federal Arbitration Act. Let me just address this prime-of-paying argument. There are bases – obviously, the legislative record – legislative history in that case has clearly references to the statute being predicated on commerce's power over interstate commerce, as well as Congress's ability to prescribe procedures over the district courts and the court – federal courts generally. So this is just a matter, ultimately, of different judges ultimately coming to different interpretations of the same statute. This is nothing new. This is nothing out of the ordinary. It happens all the time. And clearly, there's – if we are going to go back in time to – which is what Mr. Piano seems to want to do, to go back to whether prime-of-paying was correctly decided in the first place, it clearly was an arguable basis for the Supreme Court to have made that determination. There's no – there was no basis for disqualification. I mean, this is clearly – whatever alleged ethical mishaps happened to Justice Fortas had nothing to do with his decision in prime-of-paying. There's no showing in the record that somehow the – his issues with the Wolfson Foundation had anything to do with his decision, which, of course, six other justices on the Supreme Court at the time also agreed to. With regard to the arbitration agreement and what Fidel was required or not required to do, it's actually pretty clear. And basically, the scenario that is at issue here is what happens once he initiates an arbitration, as the agreement calls for. And the – both of the count agreements – actually, I think this is actually the agreement for the trust account, the Morrill-Ario trust account, since that's the account that he was referencing, I think, in his papers. And the language after all controversies are – shall be determined by arbitration through a financial industry regulatory authority or any United States securities regulatory organization or United States securities exchange of which the person, entity, or entity against whom the claim is made is a member. The agreement then goes on to say if you commence arbitration through a United States self-regulatory organization or United States securities exchange and the rules of that organization or exchange fail to be applied for any reason, then you shall commence arbitration with any other United States self-security, self-regulatory organization, or United States securities exchange of which the person, entity, or entity against whom the claim is made is a member. The you here is the customer, Mr. Pierano. If you do not notify us in writing of your designation – in other words, the alternative forum in case you – the forum that you brought your claim against in the first place is now following its rules – if you do not notify us in writing of your designation within five days after such failure or after you receive from us a written demand for arbitration, then you authorize us to make such designation on your behalf. There's no requirement on Fidelity's part to do anything. They have the right to designate another forum if they so desire, but this is all predicated on plaintiff in the first instance following his obligation in the arbitration agreement to commence arbitration. He never did that. So there was nothing for Fidelity ever to do because he declined and he told the district court, I'm not arbitrating. I don't have – I disagree with this decision. I don't have to arbitrate. So the agreement that he cites doesn't impose any obligation on Fidelity to commence an arbitration on his behalf. He is the plaintiff. He is the claimant. He is the one under the agreement who needs to initiate arbitration. And under this agreement, he should – and he's still supposed to – initiate arbitration before FINRA or some other exchange as called for by the agreement. With regard to the handing over of his motion to the magistrate judge, I think we've addressed that. I don't think we need to say anything further. With regard to disqualification, which I think he in his and also Judge Medina, who had authored the Robert Lawrence decision from 1956 to 1957, which was the – I guess the initial decision where the Commerce Clause was cited as the basis for the FAA, there's no – there was no – there's no correlation between in – with regard to Justice Medina – Judge Medina, sorry, his handling of a – of a civil Sherman Act trial several years earlier when he was on the bench in the Southern District, there's no connection between that and his decision. So there's no basis for him now, 60 years later, to have disqualified himself, and the same with, as I said earlier, with Justice Fortas. Reasonable judges can come to different conclusions, and that's all we had here. You know, we had a majority of the Supreme Court repeatedly have held that the FAA is based on the Commerce Clause. There were a number of other arguments that were cited in plaintiff's papers about the constitutionality. This Court has dealt with the Article III argument already in the Katz v. Selko case from – it was a district court, and it was affirmed for substantially the reasons before the district court. So I don't think I need to elaborate on that. Other – other courts have addressed the – the Seventh Amendment and have said there's no Seventh Amendment jury right issue here. When there's a waiver of the right – of the right to have a trial in the first place, you never – don't even get to this issue of the Seventh Amendment jury right. The panel – unless the panel has any other questions, I'll – I'll stop. Thank you. We'll hear rebuttal. In terms of the Robert Lawrence decision with Medina – Justice Medina, Justice Medina in 35 years after the Federal – the FAA – Federal Arbitration Act was passed, miraculously announces that a procedural statute is now a substantive statute. Based on what? He doesn't give any. He just miraculously announces it and – and it becomes, you know, it becomes law, which is a – it's a – there is a – there is a separation of powers in our Constitution. Federal judges cannot legislate. The legislator – legislature legislates. Federal judges are supposed to interpret the legislation, not legislate – re-legislate it, which is what Medina did. And as for Justice Fortas, there was extrajudicial influence. He made the decision in Prima Paint where he states out of – suddenly he states that it's underpinned by the Interstate Commerce Clause. If you read the Interstate – if you read – which are attached – if you read it, the – the bill itself, it – the people that sponsored it actually said that it's not based on the Interstate Commerce Clause. It's based on a – on a procedural – it's simply a procedural statute, not a substantive one. So – so there was – Justice Fortas was asked to step down in – in 1968. The Prima Paint decision was – was recorded in 1967 while he was on the bench and while he – there was extrajudicial influence by a Wall Street manipulator. So I would – the – so I would question the impartiality of Justice Fortas in this case. And that is why I have placed several motions before this Court which asks the Court to reverse those decisions in the interest of justice, both Medina's decision and Fortas's decision. If there are any questions, I'd be glad to answer. Thank you, Your Honor. Thank you, Mr. Kuna. Thank you both for coming in. And we will take the matter under advisement.